**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lloyds of London Syndicate 2003, | No. CV-11-979-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Mary Helen Caprice Mallet; Marcia K. Sebold; and Marcia K. Sebold Living Trust, | |
| Defendants. | |
| Mary Helen Caprice Mallett, | |
| Counterclaimant, | |
| vs. | |
| Lloyds of Long Syndicate 2003, | |
| Counterdefendant. | |

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff-Counterdefendant Lloyds of London Syndicate 2003 (the "Syndicate"). (Doc. 35). For the reasons discussed below, the motion is granted in part and denied in part.

**BACKGROUND**

Defendant-Counterclaimant Mary Helen Caprice Mallet ("Mallet") met Defendant Marcia K. Sebold ("Sebold") at a women's retreat in 2002. Over the course of the next six

1  years, Sebold made a number of investments, which she later claimed were made at Mallet's
2  recommendation and in Mallet's capacity as a financial advisor with First Allied Securities,
3  Inc. ("First Allied"). In 2008, their relationship soured, and Sebold brought a complaint
4  against Mallet and First Allied in Maricopa County Superior Court, Case No. CV-2008-
5  029039 (the "Underlying Action"). (Doc. 36-1, Ex. E). First Allied and Mallet are both
6  insured by the Syndicate under a Professional Liability Policy (Policy No. 20200, or "the
7  Policy"). (Doc. 36-1, Ex. A). Mallet notified the Syndicate of the complaint, and the
8  Syndicate accepted Mallett's tender of defense under a reservation of rights, claiming that
9  a number of transactions alleged in the complaint were not covered by the Policy. (Doc. 36-6,
10 Ex. Q). On October 5, 2010, Sebold and First Allied stipulated to the dismissal of all claims
11 against First Allied in the Underlying Action. (Doc. 36-1, Ex. E). On May 17, 2011, the
12 Syndicate commenced this action, seeking a declaratory judgment that a number of the
13 transactions alleged in the Underlying Action are not covered by the Policy, and that its duty
14 to defend the Underlying Action is thereby limited. (Doc. 1). Mallett filed counterclaims for
15 Breach of Contract, Breach of the Implied Duty of Good Faith and Fair Dealing, and
16 Declaratory Relief. (Doc. 12). The Syndicate now moves for summary judgment on its
17 complaint and on the counterclaims. (Doc. 35).

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*

1  *v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material,
2  and "[o]nly disputes over facts that might affect the outcome of the suit under the governing
3  law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,
4  477 U.S. 242, 248 (1986).

5        A principal purpose of summary judgment is "to isolate and dispose of factually
6  unsupported claims." *Celotex*, 477 U.S. at 323–24. Summary judgment is appropriate against
7  a party who "fails to make a showing sufficient to establish the existence of an element
8  essential to that party's case, and on which that party will bear the burden of proof at trial."
9  *Id.* at 322; *see Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving
10 party therefore need not disprove matters on which the opponent has the burden of proof at
11 trial. *Celotex*, 477 U.S. at 323.

12       The party opposing summary judgment "may not rest upon the mere allegations or
13 denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is
14 a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith*
15 *Radio Corp.*, 475 U.S. 574, 586–87 (1986). A court deciding a summary judgment motion
16 may rely "on the papers submitted on the motion and such other papers as may be on file and
17 specifically referred to and facts therein set forth in the motion papers." *See Carmen v. S.F.*
18 *Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). It need not refer to material outside
19 of the record. *Id.*

20 **II.   Analysis**

21       Parties do not contest that the Underlying Action concerns the following transactions:
22 1) the sale of two unregistered securities issued by Mortgage Limited ("the Unregistered
23 Securities"), 2) the sale of four real properties in Colorado ("the Colorado Properties"), 3)
24 investment in ICON Leasing Fund Eleven, LLC ("ICON"), 4) investment in security interests
25 in AEI Venture Investments I, LLC ("AEI"), and 5) an investment in the Jackson National
26 Life Insurance Company annuity contract (the "Jackson National annuity"). (Doc. 36 ¶¶
27 15–17). The Syndicate asserts, and Mallett does not contest, that the terms of the Policy do
28 not cover transactions involving unregistered securities or real property. (Doc. 35 at 10–12).

1  Likewise, the Syndicate does not deny that it may be required to indemnify Mallett for claims
2  stemming from transactions involving ICON, AEI, or the Jackson National annuity. (Doc.
3  25 at 12).To the extent that the Syndicate seeks a declaration that it will not be required to
4  indemnify Mallett for claims relating to the Unregistered Securities and the Colorado
5  Properties, summary judgment is therefore granted.

6  Parties differ as to whether the Syndicate must defend the Underlying Action as a
7  whole even if though it will not required to indemnify Mallet on some of the claims.
8  Moreover, they dispute whether genuine issues of fact remain regarding Mallett's
9  counterclaims. Both parties assert that whether the Policy's New York choice of law
10 provision is enforceable is relevant to those questions.

11     **A.    Choice of Law**

12 Federal courts sitting in diversity apply the conflict of law rules of the forum state.
13 *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules
14 to be applied by the federal court in Delaware must conform to those prevailing in
15 Delaware's state courts."). When deciding choice-of-law questions, Arizona courts follow
16 the Restatement (Second) of Conflict of Laws (the "Restatement"). *See Landi v. Arkules*, 172
17 Ariz. 126, 130, 835 P.2d 458, 462 (App. 1992). This Court will therefore apply the rules of
18 the Restatement, as interpreted by Arizona state courts, to the question of whether the
19 Policy's Choice of Law provision is enforceable.

20 The Policy contains a provision that "the laws of the State of New York shall govern
21 all issues pertaining to the meaning, interpretation and effect of this Policy." (Doc. 36-1, Ex.
22 A at 16). Mallett's counterclaim includes a count alleging that the Syndicate violated the
23 implied covenant of good faith and fair dealing in handling her claim, which she now argues
24 should be construed as an Arizona state law claim that the Syndicate handled her claim in
25 bad faith. (Doc. 39 at 7). Arizona law permits insureds to bring an in independent action in
26 tort for bad faith beyond any remedies for breach of contract when a plaintiff can show "the
27 absence of a reasonable basis for denying benefits of the policy and the defendant's
28 knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."

1  *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 506–07, 838 P.2d 1265, 1267–68
2  (1992) (*quoting Noble v. Nat'l Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981))
3  *See* Arizona Revised Statutes ("A.R.S.") § 20-461. New York law does not permit such a
4  claim. *See Acquista v. N.Y. Life Ins. Co.*, 285 A.D.2d 73, 730 N.Y.S.2d 272, 278 (N.Y. App.
5  Div. 2001) ("We are unwilling to adopt the . . . tort cause of action for 'bad faith' in the
6  context of a first-party claim."). While rejecting a separate cause of action for a bad faith
7  claim, New York courts do allow claims against insurers for violating the implied covenant
8  of good faith and fair dealing. *See Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New*
9  *York*, 10 N.Y.3d 187, 194, 886 N.E.2d 127, 131 (2008) ("As in all contracts, implicit in
10 contracts of insurance is a covenant of good faith and fair dealing, such that 'a reasonable
11 insured would understand that the insurer promises to investigate in good faith and pay
12 covered claims.'") (quoting *New York Univ. v Continental Ins. Co.*, 87 N.Y.2d 308, 318
13 (1995)).

14       A choice-of-law provision is effective if the "issue is one which the parties could have
15 resolved by an explicit provision in their agreement." *Cardon v. Cotton Lane Holdings*, 173
16 Ariz. 203, 208, 841 P.2d 198, 203 (citing Restatement § 187(1)). In a previous case in which
17 an insured brought an Arizona bad faith claim against an insured when the policy contained
18 a New York choice-of-law provision, this court considered "whether an Arizona insured may
19 enter into a contract for security but not fairness—a contract in which the insurer may
20 provide the promised protection with one hand while destroying the very objects of the
21 relationship with the other." *Martin v. Great Lakes Reinsurance (U.K.), P.L.C.*, CV-08-546-
22 GMS, 2010 WL 94120, at *3 (D. Ariz. Jan. 6, 2010) (quoting *Martin v. T.L. Dallas, Ltd.*,
23 CV-08-546-DGC, 2008 WL 2705379, at *3 (D. Ariz. July 9, 2008)). The Syndicate claims
24 that the relevant inquiry is whether the Syndicate and First Allied were on equal footing
25 when the Policy was negotiated, but do not contest that Mallett is an insured under the policy
26 and had little or no power to negotiate its terms. Recognizing the "vast inequities in
27 bargaining power" between an insurer and an insured, this Court has previously held that
28 under Section 187(1) of the Restatement, a New York choice of law provision is

unenforceable to the extent that it prevents an Arizona insured from bringing a bad faith claim under Arizona law. *Id.* (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 155, 726 P.2d 565, 571 (1986)).

Likewise, the provision is not valid under Restatement § 187(2), which provides:

> The law of the state chosen by the parties . . . will be applied . . . unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Although New York has some relationship to the parties, the insured is an Arizona resident who has been sued in an Arizona court for transactions that, for the most part, took place in Arizona. Eliminating the bad faith cause of action would undercut Arizona policy because "Arizona courts have affirmatively created a cause of action to protect an insured from the unreasonable actions of an insurer." *Martin*, 2010 WL 94120, at *4. The choice-of-law provision will not be enforced to bar a claim of bad faith under Arizona law.

Regarding the Syndicate's claim for declaratory judgment regarding its duty to defend, however, the provision is enforceable under Restatement § 187(2). Both New York courts and Arizona courts recognize that the duty to defend is broader than the duty to indemnify. *Compare Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, 261, 151 P.3d 538, 544 (App. 2007) *with Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 65 (N.Y. 1991). Relying on New York state law to determine the particular contours of this right is not "contrary to a fundamental policy" of Arizona, and the parties' choice of law decision should therefore be preserved with regards to the extent of the Syndicate's duty to defend. Restatement § 187(2).

Thus, the law of Arizona will apply to Mallett's bad faith counterclaim, but the law

1 of New York will apply to the Syndicate's underlying claim.

### B. Duty to Defend

As noted above, the Syndicate acknowledges a potential indemnity obligation with respect to ICON, AEI, and the Jackson National annuity. ("Syndicate 2003 recognizes that there are relatively minor claims presented by the action which implicates [*sic*] the policy's defense coverage provisions.") (Doc. 35 at 12). Likewise, Mallett makes no effort to contest the Syndicate's claim that it is not required to indemnify her for claims regarding the Unregistered Securities or the Colorado Properties. Instead, Parties dispute whether the Syndicate must continue to defend the entire litigation even though it must only indemnify Mallet on some of the underlying claims.

"An insurer's obligation to furnish its insured with a defense is heavy indeed, and, of course, broader than its duty to pay." *Int'l Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 326, 320 N.E.2d 619, 621 (N.Y. 1974). The duty to defend "is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 476 N.E.2d 272, 275 (1984). Under New York law, a court may look beyond the four corners of a complaint and release an insurer from the duty to defend, so long as the insurer can "demonstrate that *the allegations in the underlying complaint* are 'solely and entirely' within specific and unambiguous exclusions from the policy's coverage." *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1205 (2d Cir. 1989) (emphasis added).

"The obligation to defend is readily understood and its requirement is clear—the insurer must afford a defense to the insured for covered as well as noncovered claims if the latter are intertwined with covered claims." *Federal Ins. Co. v. Kozlowski*, 18 A.D. 3d 33, 41 (App. Div. 2005). Although the Syndicate here argues that the individual transactions were not "intertwined," the Appellate Division in *Kozlowski* provided no definition for "intertwined," and required the insurer there to defend against two civil lawsuits and one

- 7 -

criminal prosecution in their entirety. *Id.* at 34.[1]

The Syndicate has provided no decision by a New York state court applying New York law in which an insurer has been relieved of its duty to defend individual counts within a lawsuit based upon the fact that it had no duty to indemnify those counts, when other counts which it did have a duty to indemnify remained active. Ample caselaw suggests that New York does not permit the duty to defend to be partitioned in this manner. *See Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 669–70, (1981) (the duty to defend "includes the defense of those actions in which alternative grounds are asserted, even if some are without the protection purchased"); *Cty. of Columbia v. Cont'l Ins. Co.*, 189 A.D.2d 391, 398, 595 N.Y.S.2d. 988, 993 (N.Y. App. Div. 1993) ("[D]efendants must provide a defense if *any* of the claims asserted potentially fall within the coverage provided.") (emphasis added); *National Grange Mut. Ins. Co. v. Cont'l Cas. Ins. Co.*, 650 F. Supp. 1404, 1408 (S.D.N.Y. 1986) ("[E]ven if some of the allegations of the underlying complaint are clearly outside the scope of coverage contained in the policy, the insurer is obligated to defend unless the allegations as a whole preclude coverage."); and *Golotrade Shipping and Chartering, Inc. v. The Travelers Indem. Co.*, 706 F. Supp. 214, 218-19 (S.D.N.Y. 1989) ("[T]hus [the insurer's] position . . . that it was not obligated to defend . . . non-covered claims . . . is clearly contrary to law. Unquestionably, [the insured] was obligated to furnish a defense . . . on the non-covered claims as there were claims alleged which clearly fell within the policy.").

The Syndicate has offered one case in which the Western District of New York, sitting in diversity, found that an insurer could be relieved of its duty to defend on some of the claims within a larger suit. *See Burt Rigid Box Inc. v. Travelers Property Cas. Corp.*, 126 F.

---

[1] The court noted that the policy in question called for reimbursement of defense expenses in certain circumstances, and noted that while the insurer had to "pay defense costs as they are incurred," such costs could later be reapportioned under that policy. *Kozlowski*, 18 A.D.3d at 42. The Syndicate currently makes no argument for reimbursement in this action, but reserves the right to later make such an argument under California law if and when a court finds that California law governs the case. (Doc. 42 at 8 n.2).

- 8 -

Supp. 2d 596, 639–41 (W.D.N.Y. 2001). In *Burt*, the New York State Department of Environmental Conservation ("DEC") had found that manufacturer was required to clean up contaminated waste sites. *Id.* at 603. The manufacturer had also been named in multiple lawsuits alleging personal injury and property damage. *Id.* at 605. The manufacturer sought declaratory relief that its insurer was obligated to defend and indemnify it against all of the suits. The Western District confirmed that "the duty to defend is not contingent on the likelihood that the insurer will ultimately be required to indemnify the insured," and that the duty "exists even if the complaint filed against the insured asserts additional claims falling outside the policy's coverage or within an exclusionary provision." *Id.* at 635.

Although the court thereby found that the insurer was required to defend the insured on the majority of the claims, it noted that discovery had revealed that the loss of consortium claims alleged by three personal injury plaintiffs had accrued outside the covered period, and that the insurer would not be required to indemnify those claims. *Id.* at 639. It further found that two of the personal injury claims had been filed by persons who had not been present at the toxic sites at all during the covered period, and that the insurer was not required to indemnify those claims. *Id.* at 640. The court then found that the insurer was not required to defend against claims brought by the five plaintiffs whose claims would not be indemnified, even though those claims were part of a larger lawsuit. *Id.*

The insurer in *Burt* had further asked, with regard to claims spanning a time that included both covered and uncovered periods, that the court relieve the insurer of the burden to defend the claims to the extent they fell outside the coverage period. The court responded that it could not relieve the insurer of its "duty to defend those *portions* of claims which it maintains are outside the coverage period," because it was "without authority to do so under controlling New York law." *Id.* (emphasis in original). In sum, although *Burt* did find that an insurer was relieved of its duty to defend on some counts but not others of a single lawsuit, it did so only when those counts involved separate parties from the remainder of the action, and it limited its holding by refusing to break out other claims as the insurer had requested. *Cf. Health-Chem Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 148

Misc.2d 187, 190, 559 N.Y.S.2d 435, 438 (N.Y. Sup. 1990) ("National Union is only liable for the expenses of defending certain *defendants*.") (emphasis added). Here, on the other hand, the Syndicate asks the Court to relieve it of its duty to defend separate claims brought by the same individual in the same action. To the extent that *Burt* suggests that such a separation is possible under New York law, it conflicts with numerous decisions by the New York state courts, which are more persuasive authority than a single decision by a federal court sitting in diversity. The New York state cases identified above affirming that insurers cannot be relieved of their duty to defend on a count-by-count basis remain good law, and prevent partitioning the duty to defend among individual claims brought by the same plaintiff in the Underlying Action.[2]

The Syndicate's duty to defend the Underlying Action may not be delegated on a claim-by-claim basis under New York law. *Seaboard*, 64 N.Y.2d at 310. Summary judgment will not be granted on its underlying claim.

### C. Counterclaims

The Syndicate devotes no more than the following sentence to Mallett's counterclaims in its motion: "Moreover, as Ms. Mallett's Counterclaim is premised on the same coverage issues as the Complaint, the Syndicate 2003 requests that said Counterclaim be dismissed in its entirety." (Doc. 35 at 13). Since summary judgment was not granted on the Syndicate's claims, it likewise will not be granted on Mallett's Counterclaims.

## CONCLUSION

The Policy's New York choice of law provision is enforceable with regards to the duty to defend the Underlying Action, but is not enforceable to prohibit Mallett from bringing an Arizona state law claim for bad faith by an insurer. New York law does not

---

[2] The Second Circuit reversed another portion of *Burt* in which the district court had limited the insurer's duty to defend, holding that the insurer had a greater responsibility than the district court had found. Regarding the personal injury claims, the Circuit found that the court had properly relied on extrinsic evidence, and did not address the fact that the duty to defend had been divided among individual claims. *See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Co.*, 302 F.3d 83 (2d Cir. 2002).

permit apportioning the duty to defend an ongoing lawsuit among the individual claims within that lawsuit, and the Syndicate acknowledges that it has a duty to indemnify Mallett on some of the claims in the Underlying Action. Summary judgment is therefore denied on the duty to defend. Summary judgment is granted to the Syndicate with regards to its duty to indemnify on claims relating to the Unregistered Securities and the Colorado Properties. Summary judgment is further denied with regards to Mallett's counterclaims.

**IT IS THEREFORE ORDERED:**

1. The Syndicate's Motion for Summary Judgment (Doc. 35) is **granted in part and denied in part**:

   A. Summary judgment is **granted** to the Syndicate to the extent that it asserts that it is not required to indemnify Mallett for claims relating to selling the Unregistered Securities or the Colorado Properties.

   B. Summary judgment is **denied** to the Syndicate with regards to its duty to defend the Underlying Action.

   C. Summary judgment is **denied** to the Syndicate with regards to Mallett's Counterclaims.

DATED this 18th day of May, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge